The Court is calling Appeal 24-2702, United States v. Glenn Wooden, and we'll begin, Mr. Hamernick, with argument from you. Good morning, Your Honors, and may it please the Court. Jared Hamernick for Glenn Wooden. I'm going to do my best to reserve about three minutes for rebuttal. Very good. We're asking this Court to reverse Mr. Wooden's conviction because two instructional errors deprived the jury—the jury was deprived of two important instructions. The first goes to the elements of the offense. The jury was not instructed, despite Mr. Wooden's request, that methamphetamine, as defined by federal law, does not include all kinds of methamphetamine. Instead, it's limited to methamphetamine composed of the optical isomer. The second instruction that was not given at Mr. Wooden's trial was the dual role witness instruction. After United States v. Jett, the circuit crafted a pattern instruction on how to evaluate witnesses who testify both in a lay capacity about what they did, not in the case, and as experts about how to do things generally. In this case, the government's key witness was Mr. Chavez, a forensic chemist. He testified both about how he tested the methamphetamine and how experts generally test methamphetamine. Because of these two errors, we would ask this Court to reverse the demand. Let's start with the first, the methamphetamine question. When we look at the statutes, we look at the guidelines, look at the case law, it is a term, a methamphetamine that has admitted of differences, D versus L. Methamphetamine has been looked at one way during the categorical approach cases, also in other areas. Wouldn't your client's definition, limiting it to optical isomers, drain the word methamphetamine of meaning? Wouldn't there be nothing left if it was just optical isomers? I don't think that's right. In fact, I think it's exactly the opposite. Congress defined methamphetamine in this way, and so that's how we know the substance of the term is based on the definition that Congress provided. The optical isomer of methamphetamine is one type of methamphetamine, but there are others that are not illegal to possess. They are essentially food additives and gym supplements and this sort of thing, which is why Congress has not outlawed their possession. Once it became clear that there was going to be a debate about this, after the first day of the third day trial, there was this request for judicial notice that occurs by the government. The court indicates judicial notice with regard to the illegality of the certain substances. At that point forward, put to the side the whole waiver forfeiture question. Put that to the side. At that point, isn't there an understanding among the parties who are litigating this case as to the substance that is charged to being possessed? And furthermore, that that substance itself is illegal. So I don't think that's right, and maybe I'm misunderstanding the question, but Mr. Wooden's whole theory throughout the entire course of the trial was to try to convince the jury that the government had not proven that the substance that the government was calling methamphetamine met the definition of methamphetamine as defined under the congressional definition. So when you have this sort of this colloquy about judicial notice and so on, he is still, Mr. Wooden was still resting his argument on, and I think we know this because he later moved for judgment of acquittal on it. He tried to argue this to the jury. He was still basing his defense on the idea that methamphetamine is a limited term, right? That it includes only methamphetamine made of optical isomers. Now it's not possible for methamphetamine not to be made of isomers. Isomers are just the molecules that make it up. But Congress has specifically said that only some of those molecules are illegal. I'm wondering there whether if we go down the path that you're asking us to do, whether we might create a circuit split. The Third Circuit, in a case called Julius, examined whether methamphetamine under 841 means D or L, and ultimately concludes that the statute doesn't make a distinction between those two. If we were to draw that distinction, would we be contrary to the Third Circuit then? So I'll confess I'm not familiar with that Third Circuit case. I don't think it came up in the briefing. I don't think you'd be creating a circuit split though, because the record in this case does not demonstrate whether D and L methamphetamine can exist in both positional and optical form, or if it's just one, you know, if D methamphetamine is a form of optical isomers or a form of positional isomers, right? So the record in this case doesn't say that D and L methamphetamine are not necessarily distinct from positional isomers and optical isomers. So I guess the point is, what I'm trying to say is I don't think you'd be creating a circuit split because, you know, the government may still be able to prove that something is D methamphetamine or L methamphetamine without, I'm not sure whether that would preclude the government from, you know, D methamphetamine may be an optical isomer or methamphetamine. I think Java has testified actually that D methamphetamine, at least in some cases, is an optical isomer. So I don't think you'd be creating a circuit split. Let me ask you this. Is Mr. Wooden reading the words, any quantity out of the statute and the word including out of the statute, Schedule 2C? In other words, let me flesh this out. Schedule 2C says that any quantity of methamphetamine is against the law, including isomers, salts, salts of isomers, okay? Where you have Chavez on the stand saying, hey, we found methamphetamine, where it's clear to the jury he confessed to having methamphetamine, and where Chavez says, I did a test and I found some optical isomers, doesn't say how much, doesn't say weight, blah, blah, blah. But he says, I found some optical. How does that not satisfy the statutory definition of where we find any quantity of methamphetamine, including isomers, game over? Sure. And I appreciate the question because I think what that question is getting at is, was there sufficient evidence for a conviction in this case? Which is one of his claims. Yes, but as it relates strictly to the drug quantity. So our primary argument here is that the jury had to be instructed on that point. The jury had to be instructed that this was a critical difference. And so the standard for reversal on an erroneous... What was the critical difference? It was a critical distinction whether or not the methamphetamine was made of optical isomers or not, right? And the only evidence at trial about the isomeric form of methamphetamine came on cross-examination by Mr. Witten of Mr. Chavez. And so because we're raising primarily a jury instruction challenge, what we're saying is that this is a question that had to be submitted to the jury. The jury was specifically told that all of this was irrelevant, that it didn't matter. But that's not right. Under the statute, this actually is a critical distinction because some forms of methamphetamine are outlawed and some are not. So I'm just like... No, so the only point there is because we're raising a jury instruction challenge, we don't have to show that he would have been acquitted. We just have to show a reasonable probability of a different outcome. And we think there are several here. And that's if we're assuming plenary review, which I don't want to do, if we're on a de novo review, then of course the government would have to show it's harmless beyond a reasonable doubt. And I don't think they can do that given that the jury was instructed and the government argued that this whole subject was irrelevant. So let's assume that we agree with you and that the jury instruction should have been more specific. In the end, taking a step back, you have methamphetamine that has illegal forms and methamphetamine that has legal forms. And we have consistently held that the government can prove that a substance is illegal, prohibited by the statute, via circumstantial evidence. And so here you have Chavez saying that he did some tests and he found the D-optical isomer. And he also did some other tests and he found that all of the meth was pure. And there's also lots of evidence that at least Mr. Wooden believed that the meth he had was the illegal kind, not the legal kind, because he took all of these steps to avoid capture and detection, right? Why taking all of it together, isn't that enough evidence for the jury to find that, well, you know, here, to convict Mr. Wooden of possessing the illegal type of methamphetamine, therefore rendering any jury instruction deficiencies that we might find to be harmless. Sure, because none of that tells you what the molecular composition of the substance was. But why do we need to know that if, as long as we know that we're dealing with the illegal type, that is, you know, obviously it's the optical isomer, but as long as we're dealing with the illegal type and everyone knew that we were dealing with the illegal type and Mr. Wooden believed that it was illegal and certainly he wasn't selling food additives, you know, why isn't that enough for, to sustain the jury's, the verdict in this case? Because the government had to prove beyond a reasonable doubt that the methamphetamine was methamphetamine as defined by federal law, right? So it's not, it was not Mr. Wooden's burden to prove that the substance was uncontrolled. It's the government's burden. But I guess my question is why doesn't all the circumstantial evidence that the government presented meet that burden? Right. And I think it's because what we're talking about here is a distinction that's drawing a line at the molecular level and none of that tells you what kind of molecule was involved in the substance. Well, again, but doesn't the fact that, you know, the fact that there's illegal kind and the legal kind and here we're clearly being with the legal kind, isn't, doesn't that go to that question? Well, I think we're clearly dealing with what everybody may have thought was illegal, but this is a point that the government has to prove beyond a reasonable doubt. So I mean, I think in some ways I wonder if we're missing the forest and I've been asking myself this too. I wonder if we're missing the forest for the trees here because we're dealing with organic chemistry and molecules and isomers. If Congress passed a statute that, you know, said that it's unlawful for anyone to possess a firearm. And then in a separate statute said, well, we defined firearm to be machine gun. The government couldn't just walk into court and possess and convict somebody for possessing a firearm without, without proving that the firearm was a machine gun, right? The congress, the congressional term matters. Relevant to that inquiry. Wouldn't, what if the government, you know, had wire wire tap recordings and defendant says, Hey, you know, I'm going to sell you a machine gun like that would be relevant evidence, right? Sure. Whether or not, whether or not it truly was the fact that he thought it was machine gun is relevant evidence that inquiry. So it's, it's certainly relevant evidence, but if, so if that existed, but then it, you know, the government also walked in and instruct and argue to the jury and got a jury instruction that essentially it doesn't matter if it's a machine gun. It doesn't matter if it's the right, the wrong kind of methamphetamine that is like, that's what we, that's why we don't know what the jury would have done because the jury was instructed that all of this was irrelevant and none of it mattered, but to reserve the remainder of your time. Sure. I'll do that. Very good. Thank you. Mr. Hammer. We'll now move to argument on behalf of the government. Ms. Boyle. Good morning. Your honors. May it please the court. Counsel. My name is Catherine Boyle. On behalf of the United States, um, on appeal, Mr. Wooden is primarily arguing that the district court erred by failing to offer jury instructions that include the federal definition of methamphetamine down to the optical isomers as an element of each of his offenses. Mr. Wooden has arguably waived that objection, but regardless of that, he has at least forfeited any objection to the jury instructions as to the elements of his distribution offenses and the possession of, with intent to distribute offense, possession with intent to distribute offense, and therefore plain error review should apply here. Mr. Wooden's initial- Did he really forfeit it though? Because, um, you know, he has made this objection all the way through, uh, the court recognized that he had made this objection and said that, you know, I'd ruled against him, uh, before the court went through the government's jury instructions. Um, we, all we have is a rote, you know, question and him just saying no objection. Um, you know, in, in other contexts at least, we question whether those sort of fact scenarios are even sufficient to show forfeiture, let alone- Well, your honor, I, I think if you look at this, I think the district court was trying to get this right here. If you look at Mr. Wooden's initial proffered instruction, um, it's, uh, he said that the jury must find beyond a reasonable doubt, um, that the defendant knowingly and intentionally distributed methamphetamine, its salt isomers or salts of its isomers, um, and then he references section 812. That initial proffered instruction, um, you might say it only pertained to the distribution offense, but he actually later mentions, mentions possession with intent to distribute, so arguably it applies to both. Um, but it doesn't even mention section 802.14 where the term isomer is defined and it doesn't say anything about optical isomers, um, and then Mr. Wooden objected on different grounds to the proposed pattern instruction for the possession with intent to distribute offense. In that case, he suggested the government had to prove that he knew the substance contained methamphetamine or its optical isomers, um, and the district court went into that. I think the district court was trying to figure out exactly what he wanted out of these instructions. Um, the court then confirmed that Mr. Wooden wanted the instruction to follow his proposed instruction, which as we've discussed, does not define the term isomer, and then the court said, well, I'm not going to do that. I think the government's proposed instruction is based on the pattern and it's an accurate statement of the law. So I don't think, um, during the jury instruction conference here, Mr. Wooden asked, specifically preserved a request for a jury instruction that defined methamphetamine, um, as optical isomers, um, referencing the federal definition. Let's, let's talk about this definition. So the Controlled Substances Act of 1971 makes meth, uh, Schedule III controlled substance. Statute never defines the term. Um, the statute makes both methamphetamine as well as its optical isomers controlled substance, controlled substances, but it still doesn't purport to define the term. Um, our case law is less than fully clear. We seem to have a certain definition within the categorical approach cases other than non. Um, what definition should we utilize? Well, the government agrees that it has to prove methamphetamine as a controlled substance in every case. Um, and we think that the government did that here. The government conducted routine testing. When the defendant's questions about isomers, salts of isomers, came up, the government said, the government was able to show it was de-methamphetamine, which is an optical isomer based on the testimony of Louis Chavez. Um, the district court, as, as you've no, the, this court, as you've noted, has said in some of its prior cases that methamphetamine in the categorical approach context, such as De La Torre and other cases that methamphetamine, um, under federal law in those contexts should be limited to its optical isomers. Um, when you're, and methamphetamine is essentially in multiple different forms. You have liquid methamphetamine, which is usually a combination of de-methamphetamine and L-methamphetamine. Um, and then you can also see methamphetamine in isomeric and salts of isomers form. Um, in this case, we were, we had to, in this case, we were looking at a salts of isomers form of methamphetamine, which is ice methamphetamine. Um, and when you're looking at the salts of isomers in this case, and you look at the federal definition, it does say that the isomer in question, isomers for methamphetamine would have to be an optical isomer, which, which we agree was present here. As to whether methamphetamine generally can be a more blanket term, I don't think that's representative of this, of this case. And in the case law, I think it's a little bit muddled still. Would, would the definition of methamphetamine that's being offered by the defense drain it of, drain itself of meaning because you'd be making distinctions based upon the optical isomers and not just a more general version of methamphetamine? Um, I think the, the main issue with the definition of methamphetamine being offered by the defense as it pertains to this case is the specificity is just not needed. Um, you, jury instructions can always be more specific, but you want to look on a case-by-case basic basis and determine whether that specificity is, is warranted. Um, and in, in this case, and I think at times it can also be more confusing to all of a sudden be presenting an isomer issue to the jury in a case like this one where it's extraordinarily clear from the record, um, that the chemist found D-methamphetamine, the chemist said D-methamphetamine is an optical isomer. We have a significant amount of other evidence showing that Mr. Wooden knew he was dealing in illegal substances, including his avoidance of police contact, his, um, his avoidance of police contact, him saying he knew the customers were going to like it, suggesting it would have a psychoactive effect on them. Um, his acknowledgement that it was hot, uh, really the entire circumstances of the case here showed that this was methamphetamine that was under illegal, illegal under federal law. Um, that you could also think about the, this court's decision in United States versus Page in this context, context there you had an issue as to whether a buyer seller instruction was warranted and, um, the court determined that it wasn't because it wasn't supported by the evidence of that case. Um, conspiracy is something the government needs to prove in that case and buyer seller, the buyer seller issue is certainly a nuance of conspiracy law, but you don't need to have that level of specificity in the jury instructions where it's not warranted. And we would say here it's not warranted based on a substantial amount of evidence in this case that the type of methamphetamine that was being dealt in here was clearly illegal. Um, what, what troubles me about this case and the way that the district court, the government handled this case is that, uh, at least in one reading of the transcript, um, they just completely ignored the definition. I mean, the defendant, you know, brought the issue up in, in whatever context, but certainly as a trial judge, one would know that this is an issue that the defendant wanted to make and particularly at the cross examination of a phase, something that the defendant wanted to make. And it, you know, the dis in my reading of the transcript, the court, the response from the court and from the government is that, you know, it really doesn't matter as long as we prove, um, quote unquote math. And that seems to me that the reason why it troubles me is because it does seem to be with the government's obligation to prove the elements of the offense. And one of the elements being that the substance is a controlled substance. Um, and so I'm curious the, um, and I get what you're saying about case by case. Um, that's true of any kind of jury instruction and whether or not jury instruction is necessary. And, you know, just, we give district courts broad discretion in determining whether or not particular jury instruction is, is warranted. But can you describe me of a case where you think that a district court is obligated to give a more specific definition of methamphetamine versus to contrast it to what we see here? Your Honor, I think if the defendant had presented an expert witness, um, suggesting that perhaps the methamphetamine present was not an optical isomer, that would be a case where But then aren't you putting the burden on the defendant to, uh, kind of disprove an allegation, whereas it's the government's burden to prove in the first instance that it is a controlled substance. And that's what disturbs me about there's that First Circuit case and the Sixth Circuit case that talks about theory of defense. The, it seems to me that whether or not a substance is an illegal substance is one of the most basic elements that the government would have to prove in a drug case. We absolutely agree that the government has to prove that the defendant was dealing in a legal controlled substance in, in a, in a drug case. And the government routinely does the sort of testing, um, that does prove that. You can see in this case, um, even on direct examination, the chemist hadn't had his testimony get down to the granular level of optical isomers. That is why he concluded it was methamphetamine. You know, he does his first test where he basically determines that the chemical formula is present, but then he goes on and he tests for salts and he tests for isomers. And, you know, we, we absolutely agree that the government has a burden to prove, um, prove that and we believe the government routinely does it in this manner. Um, but that said, um, I think it does make sense when you're looking at what jury instructions make sense to issue to look at the overall evidence in the case and decide if it's warranted. And here where you have so much evidence, um, including the isomers, frankly, and you have no contrary evidence suggesting that that is incorrect, we don't believe you need to get down to the level of specificity of optical isomers in, in jury, of isomers in jury instructions. Can you include the isomers fairly in that evidence? I mean, Chavez did not say how much optical isomers he found. Do you, can you tell us, do you know if it's scientifically possible to determine in a drug weight finding, um, what percentage of methamphetamine consists of optical isomers versus other types of isomers? Um, he just, what I'm getting at is what we have is a more general statement from Chavez. I found optical, but we don't, he did not connect it to a percentage weight, anything. And then other, otherwise we just have some numbers. It's this much actual methamphetamine, but you can't fault Wooden for thinking, you know, once he sees our categorical approach case law, um, that there needs to be some more specificity when it comes to optical isomers. If you lost my actual question after I added all that, just let me know. Well, let me know if I'm not answering it well, please. Um, I'll, I'll do my best. Um, I, so just sort of initially to take, to take a step back and then go into your question, as your honors pointed out earlier, the chemist had identified the D methamphetamine isomer, and that's an optical isomer, and that's enough to show that this substance was being, was, was illegal. I think what you're going toward more, your honor, is the ratio of the substance and the drug weights and the defendant's challenge on the sufficiency of the evidence to those. Um, and I, I think on those we do, especially given the standard of sufficiency of the evidence, there is enough here. If you look at what the chemist did and what he testified to, um, he testified, you know, he figured out the net weight, gross weight, net weight. He did a purity test where he took very careful steps to make sure he had a composite powder. Um, and then he would figure out the purity percentage and for the, he performed the gas chromatography mass spectrometry test, um, which showed the presence of the correct chemical formula. And then he went and he figured out the salt form and the isomer form, which in this case was D methamphetamine. When you look at, and the defendant didn't actually end up introducing the chemist reports, but they were attached to his, um, proposed trial exhibits, um, for your, for your honors review. When you look at those reports, they do say, you know, the substance ID, then they note that it was a salt of D methamphetamine. Um, and they note the amount of pure substance. Um, and I think that's essentially what the chemist was trying to get to in his testimony. Um, when he talks about, he has, you know, 12 and a half grams of pure meth, 26.3 grams of pure meth, um, and then these various other amounts of pure meth. Um, I think a jury could reasonably conclude on that, on that evidence and on that testimony that he had done the test, the substance qualified as illegal pure actual meth in, in a amount that was sufficient to trigger the drug weights when you look at all the evidence in the record on it. But I'm not sure if that exactly answered your question, so please let me know if there's anything else. I just want to add, I only have about one more minute. Um, I, I do think that there are obviously sort of two lenses the court is being presented with here. And one is this theory of defense instruction idea and the other one is this idea that there was some sort of missing, missing element. But I, I think they both can turn on this idea of how specific you need to be based on the evidence that was presented at the trial. And I think in a case like this one, um, it's very clear that all the evidence at trial showed that the methamphetamine was illegal. Um, and for that reason, um, we don't think that any jury instruction as to isomers was necessary here, but even if this court were to determine that it was necessary, um, there certainly wouldn't, the defendant's substantial rights wouldn't have been affected in this case. You wouldn't see a different outcome where you have the chemist actually testifying there is de-methamphetamine and it is an optical isomer. Um, and similarly along those lines, it would be a harmless error because you have this testimony. Um, so although we don't believe that you need to get that specific at the jury instruction level, um, in this case, we don't believe it would have changed the outcome either way. I see I'm out of time, Your Honors. Thank you so much. Uh, if you have any further questions. Thank you, Ms. Boyle. Thank you. Mr. Hamernack, we'll recognize you now for rebuttal argument. Thank you. Just briefly. So, uh, I think there was a, there was a question, uh, whether or not the record demonstrates that methamphetamine is an umbrella term. Uh, Mr. Chavez testified at trial. This is record 202 page 89. Uh, he was asked, is it true that methamphetamine is a chemical name and has multiple chemical names as you testified to earlier? And he responds, yes, there are numerous names that methamphetamine can be used to identify. So I think the record does show that methamphetamine meet can mean multiple things. And that's why it's important for the government to prove as an element of the offense that the methamphetamine was made of optical isomers and not just methamphetamine of some kind. Um, briefly on the question of standard of review and preservation, um, record, uh, 206 page 73, uh, is, uh, it's a transcript where they're going through the jury instruction conference and the judge recognizes, uh, says specifically that Mr. Wooden was objecting on all four counts and recognizes that his objection was to all four counts. So I don't think that the argument that we're making now is, is forfeited, let alone waived. At the end of the day, the government has to prove beyond a reasonable doubt that any elemental instructional error was harmless. And I don't think they can do that when, uh, they, when the government at trial specifically and, uh, argued to the jury that isomers, zips, you know, these are all chemical names for methamphetamine, but they didn't prove the one thing that Mr. Wooden centered his whole defense on. Now, I'm not sure it was the wisest strategy to, to tie his trial strategy to this one thing, but I think at the end of the day he was right, right? Because this court has said in at least three categorical approach cases that the difference between positional isomers and, uh, optical isomers is a difference of element. Sorry, it's an elemental difference between state offenses and federal offenses. Isn't that a tough argument to make though? Because at least one of those cases, it's really grounding in Indiana law versus federal law. In, in the categorical approach, those circumstances, they're not getting to an element of the offense that went to what this defendant was objecting to. If we grant you that there's not a waiver and there's not a forfeiture, we're getting to this because of his persistence and continuing to raise this. Uh, I'm unclear. Is this a broken clock is right twice a day type objection? Or is this a, no, this is grounded in a definition, um, uh, in the, in, in the statute or definition in the case law that he is, um, raising and isolating and therefore is exculpatory. Sure. I'm not sure those are mutually exclusive. Okay. Um, but the point is, I think, so he latched onto this point that, that was developed, that has been developed over the last several years in the categorical approach case law where this has, where the difference, the categorical approach as your honors are all too familiar with is all about elements, right? And so when we're comparing the elements of the federal charge of methamphetamine possession, we are, it is narrower on this specific point on the definition of isomers, right? And so that's why it's part of the elements of the defense. And so Judge, Chief Judge Brenner, earlier you asked about a circuit split. I think we'd be creating an intra circuit split if we say, you know, that this is essentially Schrodinger's element. It's an element for the categorical approach. It's not an element, uh, on direct appeal. And I know you've told us, but tell me one more time why Chavez's testimony that he found D methamphetamine and an optical isomer. I don't know whether the article is and, but he says found obstacle isomer. Why that is not sufficient. Sure. So on, it's not sufficient on, on our jury instruction challenge because his testimony, yes, he said that, but his testimony was also all over the place. He contradicted himself. The government even told the judge that he didn't check for the isomeric form. And so, so it's not, so as it relates to the jury instruction challenge, I don't think the government has proven it's harmless beyond reasonable doubt for this issue to have been taken away from the jury. And then as it relates to our sufficiency of the evidence on the drug weight, uh, that proves that, you know, basically, you know, an eight 41 B one C offense, there was some amount of prohibited methamphetamine present, but there was not, but there was no evidence that, uh, that about how much, um, of the total substance was comprised of optical isomers. And so that's why there was not sufficient evidence for the jury's finding on the drug weight. So I hope I've answered your question. Thank you. Thank you, Mr. Hamernick. Thank you, Ms. Boyle. The case will be taken under advisement.